IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

Curtis Jerome Lemon, #256984          )
                                      )
                     Petitioner,      )        Civil Action No.8:08-1055-RBH-BHH
                                      )
          v.                          )        **REPORT AND RECOMMENDATION**
                                      )        **OF MAGISTRATE JUDGE**
Warden of McCormick                   )
Correctional Institution,             )
                                      )
                     Respondent.      )
_____    )

The petitioner, a state prisoner, seeks relief pursuant to Title 28, United States Code, Section 2254. This matter is before the Court on the respondent's motion for summary judgment. (Dkt. Entry # 14.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review posttrial petitions for relief and submit findings and recommendations to the District Court.

The petitioner brought this habeas action on March 24, 2008.[1] On August 15, 2008, the respondent moved for summary judgment. By order filed August 18, 2008, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the petitioner was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. On November 12, 2008, the petitioner filed a response opposing the respondent's summary judgment motion.

## I. PROCEDURAL HISTORY

The petitioner is currently incarcerated at the McCormick Correctional Institution. In March 1998, the petitioner for murder and criminal sexual conduct ("CSC") in the first

---

[1]This date reflects that the petition was date stamped as received on March 24, 2008, at the McCormick Correction Institution mailroom. (Pet. Attach. # 5.) *Houston v. Lack*, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

degree. He was represented by attorneys Juan Watson Tolley and Lisa Gay. On March 15, 1999, he was tried by a jury with the Honorable Gerald C. Smoak, Jr., presiding. On March 18, 1999, he was found guilty as charged and Judge Smoak sentenced him to thirty (30) years for the manslaughter charge and thirty (30) years for the CSC charge, to run concurrently.

The petitioner filed a direct appeal. He was represented by Appellate Defender Robert M. Pachak , who filed an *Anders*[2] brief on March 5, 2001, raising one issue: Whether the trial judge erred in charging the jury on the lesser included offense of voluntary manslaughter when there was no evidence to support the charge. On April, 5, 2002, the South Carolina Supreme Court denied the appeal in an unpublished opinion, *State v. Lemon*, No. 2002 UP-032 (Ct. App. April 5, 2002). The remittitur was sent down on April 26, 2002.

On August 13, 2002, the petitioner filed an application for post-conviction relief ("PCR") raising the following grounds for relief, quoted verbatim:

> The [petitioner's] Sixth Amendment right to the effective assistance of counsel was violated.
>
> 1. Counsel was ineffective for failing to object to the trial court's submission of voluntary manslaughter as a lesser included offense of murder to the jury.
>
> 2. Counsel was ineffective for failing to object to the trial court's omission of a jury instruction on the voluntariness of the [petitioner's] statements to police.
>
> 3. Counsel was ineffective for failing to request the trial court issue a more complete charge of law in response to the jury's request to be reinstructed on the law.
>
> 4. Counsel was ineffective for failing to object to the trial court's <u>Allen</u> charge to the jury absent any indication such a charge was necessary.

---

[2]*Anders v. California*, 386 U.S. 738 (1967).

> 5. Counsel was ineffective for failing to contemporaneously object to evidence of the [petitioner's] purchase and use of crack cocaine in order to preserve for appeal the trial court's denial of the in limine to exclude such evidence.

6. Counsel was ineffective for failing to object to the solicitor's improper bolstering of the credibility of state witnesses Scott, Harris, and Cromwell during direct examination.

> 7. Counsel was ineffective for failing to object to the solicitor's improper bolstering of Allen Cromwell's credibility by use of prior inconsistent statements.

> 8. Counsel was ineffective for failing to present favorable witness and evidence.

An evidentiary hearing was held on June 16, 2004, before the Honorable Doyet A. Early, III.  The petitioner was present at the hearing and represented by attorney Bob J. Conley. At the hearing on this matter, the petitioner added a claim that counsel was ineffective for failing to object to certain statements made by the Solicitor in closing arguments.  On September 23, 2004, the Judge Early filed an order denying the petitioner PCR.

The petitioner timely appealed the denial of PCR to the South Carolina Supreme Court.  On appeal, he was represented by Appellate Defender Wanda H. Carter. The petitioner raised the following four issues on appeal:

> 1. Was trial counsel ineffective in failing to request a charge on the jury's assessment of the voluntariness of a statement?

> 2. Was trial counsel err in failing to renew his objections to the prior crimes evidence that surfaced at trial?

> 3. Was trial counsel err in failing to call favorable witnesses on behalf of the petitioner's defense?

> 4. Was trial counsel err in failing to object to the solicitor's improper closing argument?

3

The case was transferred to the South Carolina Court of Appeals and on October 30, 2007, the South Carolina Court of Appeals denied the petition for a writ of certiorari. On November 15 2007, the remittitur was sent down.

The petitioner then filed this habeas action raising the following grounds for relief:

> **Ground One**: Failing to object to the trial court's submission of voluntary manslaughter as a lesser included offense.
> **Supporting Facts:** There is no evidence to support such an instruction. Specifically, there was no evidence that the applicant acted while in a heat of passion upon legal provocation.
>
> **Ground Two:** Failure to object to and preserve for appeal the trial court's failure to instruct the jury on the voluntariness of applicant's statements.
> **Supporting Facts:** The State, subsequent to a pre-trial suppression hearing, admitted certain statements made by the applicant to law enforcement authorities. The applicant did not testify and, therefore, did not concede that the statements were voluntary.
>
> **Ground Three:** Failed to request that the trial court issue a more complete charge on the law in response to the jury's request.
> **Supporting Facts:** After several hours of deliberations over a two day period the jury requested to hear the trial court's charge on the law again. Although the trial court characterized the request as one for only the definitions of the offenses, the jury specifically requested all the law be re-charged
>
> **Ground Four:** Failed to object to the trial court's Allen charge to the jury absent any indication such a charge was necessary.
> **Supporting Facts:** There was no finding as to the necessity of the charge. The Allen charge was confusing to the jury.
>
> **Ground Five:** Counsel was ineffective for failing to contemporaneously object to evidence of the applicant purchase and use of crack cocaine in order to preserve for appeal the trial court's denial of the in limine motion to exclude such evidence.
> **Supporting Facts:** During pre-trial motions, counsel requested that evidence of drug and alcohol use by the applicant be excluded on the grounds that such evidence is irrelevant and highly prejudicial. The trial court denied the motion. During the Solicitor's opening statement, he commented that the jury would hear evidence about the applicant smoking crack. Counsel, during opening statements, told the jury there would be evidence of the applicants purchase of crack cocaine.

**Ground Six:** Counsel was ineffective for failing to object to the Solicitor's improper bolstering of the credibility of state witnesses Scott, Harris, and Cromwell during direct examination.
**Supporting Facts:** This improper vouching was prejudicial where Harris, Scott and Cromwell were the only witnesses to testify that applicant assaulted the partially clothed victim. Harris and Cromwell provided the evidence that the applicant was attempting a sex act against the victim's will.

**Ground Seven:** Counsel was ineffective for failing to object to the Solicitor's improper bolstering of Allen Cromwell's credibility by the use of his prior consistent statements.
**Supporting Facts:** This bolstering was used to corroborate Cromwell's trial testimony which was inconsistent with other portions of the same statements and entirely contrary to his first two statements. Additionally, the bolstering was used to establish that applicant's alleged sex act attempted on the victim.

**Ground Eight:** Counsel was ineffective for failing to present favorable witness and evidence.
**Supporting Facts:** During investigation of the case, Detective Connolly took a statement from Ken Bolin on January 11, 1998 wherein he indicated that he saw a white female fitting the victim's description behind Bayfront Plaza on January 9, 1998 with a group of young black males. Counsel did not interview Bolin to determine whether he could provide further information nor did counsel present Bolin at trial.

(Pet. & Appendix.)

## II. <u>APPLICABLE LAW</u>

### A.    Summary Judgment Standard

Rule 56 of the Federal Rule of Civil Procedure states as to a party who has moved for summary judgment:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact; and (2) that he is

entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party.  *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings.  Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue.  *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the petitioner's position is insufficient to withstand the summary judgment motion.  *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985).

**B.    HABEAS STANDARD OF REVIEW**

Since the petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir.1998).  Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2).

Federal habeas corpus relief may not be granted unless the relevant state-court adjudication "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings," 28 U.S.C.A. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.

## C.    EXHAUSTION AND PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### i. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.  The United States Supreme Court has consistently enforced the exhaustion requirement.

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal.  SCAR 207; *Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976). The second avenue of relief is by filing an application for PCR. S.C. Code Ann. § 17-27-10 et seq.  A PCR applicant is also required to state all of his grounds for relief in his application. S.C. Code Ann. § 17-27-90.  Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts.  A PCR must be

8

filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977); *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983).

ii. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, *Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those

9

decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. *Reed v. Ross*, 468 U.S. 1, 10-11 (1984).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

iii. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *Matthews v. Evatt*, 105 F.3d 907 (4th Cir. 1997)(citing *Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991); *Teague v. Lane*, 489 U.S. 288, 297-98 (1989); and *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996).

iv. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. *Granberry v. Greer*, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. 478. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an

10

external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.*

Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982).

### III. DISCUSSION

While the petitioner raises eight grounds in his habeas petition, the respondent contends that five of those grounds were procedurally defaulted in state court and thus are barred from consideration on habeas review. The undersigned agrees. Grounds One, Three, Four, Six, and Seven were procedurally defaulted in state court.

In Ground One, the petitioner raises a claim of ineffective assistance of counsel in failing to object to the trial court's charge on voluntary manslaughter. While this issue was raised at the PCR hearing, it was not raised in the petitioner's appeal from the denial of PCR. Therefore, this issue was procedurally defaulted in state court and cannot be considered now on habeas review. *Coleman v. Thompson,* 501 U.S. 722 (1991)(failure to properly appeal issue to state appellate court results in procedural bar on habeas review).

The petitioner contends in his memorandum that "[t]here is no requirement under South Carolina law to petition an appellate court for review for a writ of certiorari after being denied post-conviction relief." (Pet'r's Mem. at 9.) The petitioner cites the following language from *State v. McKennedy*, 559 S.E.2d 850, 853 (S.C. 2002)(internal citation omitted):

> We therefore declare that in all appeals from criminal convictions or post-conviction relief matters, a litigant shall not be required to petition for rehearing and certiorari following an

11

> adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.

In *McKennedy*, the South Carolina Supreme Court reiterated its position that discretionary review by the South Carolina Supreme Court is outside of South Carolina's "ordinary appellate procedure." *See In Re Exhaustion of State Remedies in Criminal and Post-Conviction Relief Cases*, 471 S.E.2d 454 (S.C. 1990) ("[W]hen the claim has been presented to the Court of Appeals or the Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.")  This simply means that presentation of claims to the South Carolina Court of Appeals without more (i.e. petitioning the South Carolina Supreme Court) is sufficient to exhaust state remedies. Accordingly, the petitioner's argument that he has exhausted his state remedies by raising the issue in PCR is without merit.  He was required to seek appellate review of the issue by the South Carolina Court of Appeals (or the South Carolina Supreme Court) following the denial of PCR.

In Ground Three, the petitioner raises a claim that counsel was ineffective because counsel failed to request the trial court issue a more complete charge on the law when the jury requested to be recharged.  Again, while this issue was raised at PCR hearing, it was not raised on appeal to the South  Carolina appellate courts from the denial of PCR. Therefore, this issue was procedurally defaulted in state court and cannot be considered on habeas review.  *Coleman*, 501 U.S. 722.

In Ground Four, the petitioner alleges ineffective assistance of counsel for failing to object to the trial court's *Allen* charge.  While this issue was raised at PCR, it was not raised on appeal to the South Carolina appellate courts from the denial of PCR.  Therefore, this issue was procedurally defaulted in state court and cannot be considered now on habeas review.  *Coleman*, 501 U.S. 722.

In Ground Six, the petitioner alleges ineffective assistance of counsel in failing to object to the solicitor's alleged improper bolstering of witnesses Scotty Harris and Cromwell during direct examination. While this issue was raised at PCR, it was not appealed to the South Carolina appellate courts from the denial of PCR.  Therefore, this issue was procedurally defaulted in state court and cannot now be considered on habeas review. *Coleman,* 501 U.S. 722

In Ground Seven, the petitioner alleges ineffective assistance of counsel in failing to object to the solicitor's improper bolstering of witness Allen Cromwell through the use of his prior consistent statements.  This specific issue was not raised to and ruled upon in the PCR Court's order.  While the petitioner raised claims of ineffective bolstering at PCR, his claims did not deal with this specific issue - i.e. bolstering of witness Allen Cromwell on re-direct examination.   Therefore, this issue was procedurally defaulted in state court. *Pruitt v. State,* 423 S.E.2d 127 (S.C. 1992)(issue must be raised to and ruled on by PCR Court to be preserved for appellate  review).

 When a state prisoner has defaulted his claims in state court, habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.  *Coleman,* 501 U.S. at 750.  The petitioner has not shown cause and prejudice as to these claims, or that he is actually innocent of the crimes for which he was sentenced.  Therefore, the issues raised in Grounds One, Three, Four, Six, and Seven are procedurally barred from review on the merits here.

In *Kornahrens v. Evatt*, 66 F.3d 1350 (4th Cir. 1995), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally

13

barred, all discussion which follows is only dicta. *See Karsten v. Kaiser Foundation Health Plan*, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.  Accordingly, the undersigned will not discuss the merits of Grounds One, Three, Four, Six, and Seven as these grounds are procedurally barred.

**GROUND TWO**

In Ground Two, the petitioner alleges trial counsel was ineffective for failing to object to the trial court's failure to instruct the jury on the voluntariness of the petitioner's statements.  The petitioner contends that he "did not testify and, therefore, did not concede that the statements were voluntary." (Pet.)  The respondent contends this ground is without merit. The undersigned agrees.

At trial, several statements made by the petitioner were admitted.  The petitioner gave an oral statement to a retired police officer, Eugene Frazier, and both written and oral statements to Detective Sergeant Michael Gordon of the Charleston Police Department. In his statements, the petitioner admitted that he had been drinking alcohol and using crack cocaine and had been with the victim on the night of her murder, but he denied any participation in her murder.  The petitioner stated that on the night of the murder, he and the victim had been drinking together when the victim fell into a ditch. The petitioner told them that the victim took her pants off because she had gotten them wet when she fell in the ditch.  The petitioner stated that he and the victim then began talking about having sex, but the petitioner stated that he could not perform.   The petitioner stated that he told the victim he intended to go home and she could not go with him because his mother was there.  He stated that he left the victim lying down in the bushes.  He also stated that prior to leaving the victim, three men had seen them in the bushes together.

Prior to trial, trial counsel challenged the admissibility of the statements and a *Jackson v. Denno*[3] hearing was held on that issue. (App. 38.)  The solicitor argued that the petitioner was not even entitled to a *Jackson v. Denno* hearing because the petitioner was not in custody at the time he gave the statements and, furthermore, the statements were voluntary. (App. 72.)

Frazier testified at the in camera hearing that he was a family friend and former law enforcement officer and that the petitioner voluntarily came to his home uninvited and gave the statements about what he did with the victim on the night of her murder.  The petitioner then asked Frazier to call the police.  Frazier testified that he asked the petitioner if he wanted to talk to a lawyer before talking to police and the petitioner said that he did not need a lawyer.

Detective Gordon picked up the petitioner from Frazier's home.  The petitioner directed Detective Gordon to the scene of the murder and recited essentially the same story as he had told Frazier.  Additionally, the petitioner later gave a similar written statement to police.  Detective Gordon testified that the petitioner was not under arrest and was not in custody and he voluntarily went to the police station to answer more questions. Detective Gordon testified that he petitioner was read his *Miranda*[4] rights before any questioning at the police station and the petitioner never asked for an attorney and never invoked his right to remain silent.  Detective Gordon stated that after he was read his rights and waived them, the petitioner gave a written statement to police.  Following the *Jackson v, Denno* hearing, the trial judge ruled that the statements were admissible.  (App. 615.)

During the trial, trial counsel did not challenge the voluntariness of the petitioner's statements.  In fact, trial counsel referred to the statements in her opening argument and

---

[3]This hearing is commonly referred to as a *Jackson v. Denno* hearing based upon the United States Supreme Court's decision in that case.  378 U.S. 368 (1964).

[4]*Miranda v. Arizona*, 384 U.S. 436 (1966).

15

used the statements to show that the petitioner voluntarily gave the statements and was cooperative in the investigation. (App. 145; 429-430; 453-455.) Furthermore, at trial without objection, a tape recording was entered into evidence of the police reading the written statement to the petitioner. (App. 449.)

In his PCR application, the petitioner contended that trial counsel was ineffective for failing to request a jury charge on the jury's assessment of the voluntariness of the statement. The PCR Court determined that the petitioner had failed to meet his burden of showing he received ineffective assistance of counsel in this regard because the voluntariness of the statement was never in dispute and the petitioner was not in custody when the statements were given. The PCR Court concluded that the jury would have found the statements voluntary in any event. (App. 673-675.)

In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court of the United States established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. The first prong of the test requires that petitioner demonstrate that counsel's performance was deficient and "fell below an objective standard of reasonableness." *Id.* at 688. The second prong requires the petitioner to show that the deficient performance prejudiced the defense. *Id.* at 687. In order to satisfy the prejudice requirement of the two-prong test set forth in *Strickland*, the defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart v. Fretwell*, 506 U.S. 364 (1993).

The Fifth Amendment to the United States Constitution provides, "No person shall be . . . compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V. The Fifth Amendment's right against self-incrimination was made applicable to the individual states through the Fourteenth Amendment. *Malloy v. Hogan*, 378 U.S. 1, 6, (1964) ("We hold today that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by

16

the States."). Pursuant to the Fifth Amendment, "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from *custodial interrogation* of the defendant unless it demonstrates the use of procedural safeguards. . . ." *Miranda*, 384 U.S. at 444 (emphasis added).

The first step in a *Miranda* analysis involves a determination of whether the petitioner properly invoked his right to counsel. An invocation of the right to counsel "must be made in the context of a custodial interrogation in order for the *Miranda* rights to attach." *Minnick v. Mississippi*, 498 U.S. 146, 150 (1990) (holding "once an individual in custody invokes his right to counsel, interrogation must cease until an attorney is present . . .")(internal quotation marks omitted).

In determining whether a person is "in custody," the question is whether, examining the totality of the circumstances, a reasonable person in defendant's position would have felt "at liberty to terminate the interrogation and leave." *Thompson v. Keohane,* 516 U.S. 99, 112 (1995); *see also California v. Beheler*, 463 U.S. 1121, 1125 (1983) ("[T]he ultimate inquiry is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."). In making the "in custody" determination, courts may consider a variety of factors, including: (1) whether the officers told the suspect he was under arrest or free to leave; (2) the location or physical surroundings of the interrogation; (3) the length of the interrogation; (4) the use of coercive tactics including hostile voice tones, displaying weapons, or physically restraining the suspect; and (5) whether the suspect voluntarily submitted to questioning. *United States v. Willaman*, 437 F.3d 354, 359-60 (3d Cir. 2006)(citations omitted); *see also Yarborough v. Alvarado*, 541 U.S. 652, 669 (2004) (considering factors such as coercive tactics, length of the interrogation and whether defendant was offered a break in determining whether a defendant was "in custody").

17

Further, "[a] statement is involuntary under the Fifth Amendment only if it is 'involuntary' within the meaning of the Due Process Clause." *United States v. Braxton*, 112 F.3d 777, 780 (4th Cir. 1997) (citations omitted). A statement will be deemed involuntary if the defendant's will has been "overborne" or her "capacity for self-determination critically impaired." *United States v. Pelton*, 835 F.2d 1067, 1071 (4th Cir. 1987). The voluntariness of a defendant's statement also turns on the "totality of the circumstances," including the "characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Pelton,* 835 F.2d at 1071.

Without a doubt, the first statement which the petitioner gave to Frazier was given voluntarily and not while he was in custody. Although Frazier was a retired law enforcement officer, he was not connected to the investigation in any way. The petitioner was not in custody when he gave his statement to Frazier and there is no evidence that his statement was anything other than free and voluntary. Accordingly, the statement made to Frazier was admissible without a determination of its voluntariness.

The statements made to Gordon were almost identical to the one made to Frazier.[5] The petitioner has not presented any evidence to show that he was in custody at the time he made the statements to Gordon. Further, the only evidence in the record regarding the voluntariness of the statements is that he was read his *Miranda* rights prior to giving the written statement and he waived his rights. As the PCR court concluded, the voluntariness

---

[5]Furthermore, the admission of the petitioner's pre-arrest statements presents no Sixth Amendment problems. *Massiah v. United States*, 377 U.S. 201(1964), and its progeny hold that the Sixth Amendment prohibits the government from deliberately eliciting incriminating evidence from an accused "after he ha[s] been indicted and in the absence of his counsel." *Massiah,* 377 U.S. at 206. *See United States v. Hines*, 963 F.2d 255, 256-57 (9th Cir.1992) (explaining that a Fifth Amendment right to counsel under *Miranda* does not vest until defendant is taken into custody and Sixth Amendment right to counsel does not attach until initiation of first adversarial proceedings against defendant); *United States v. Gouveia*, 467 U.S. 180, 187 (1984)("The arraignment signals 'the initiation of adversary judicial proceedings' and thus the attachment of the Sixth Amendment.").

of the statements was never really in dispute.  Accordingly, trial counsel was not deficient for failing to request a jury instruction on the voluntariness of these statements.

However, even assuming arguendo that the petitioner could show that counsel was deficient, he still fails to meet the prejudice prong under *Strickland*.  The record does not contain any evidence that the statements were not voluntary.  The petitioner did not testify at trial and in his testimony during the PCR proceedings, he did not testify that the statements were involuntary or made in violation of *Miranda*.  The petitioner contends that, absent a concession of voluntariness, the statements should not have been found to be voluntary.  (Pet'r's Mem. Opp. Summ. J. at 12.)  However, absent any evidence of involuntariness, the PCR court correctly found trial counsel was not ineffective for failing to request a jury instruction on the voluntariness of the statements.  *See State v. Saltz*, 551 S.E.2d 240 (S.C. 2001)(where there was no evidence in the record to contradict the officers' version of events, the trial court correctly concluded the statement was voluntarily made).

The petitioner has not shown a reasonable probability that the outcome would have been different had the jury been instructed on the voluntariness of his statements.  Therefore, the petitioner has not shown the necessary prejudice.  Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

**Ground Five**

In Ground Five, the petitioner contends that trial counsel was ineffective for failing to contemporaneously object to evidence that the petitioner purchased and used crack cocaine in order to preserve for appeal the trial court's denial of the in limine motion to exclude such evidence. The respondent contends this issue is without merit.  The undersigned agrees.

19

Trial counsel made a pre-trial motion to exclude references to the petitioner's purchase and use of crack cocaine the night of the murder. (App. 67; 68; 69; 70.) The State countered that the petitioner had admitted using drugs in statements he made to several witnesses. (App. 69; 78; 89; 90.) The petitioner's motion was denied by the trial court. (App. 69; 70.) Trial counsel renewed the objection once again during the trial but did not object when the petitioner's own statements to Frazier and Gordon and the testimony of several other individuals were offered. (App. 129.)

Witness Gregory Harris testified that he saw the petitioner with the victim on the night of the murder when the petitioner emerged from the bushes and asked for crack cocaine. Witness Allen Cromwell who also testified that he saw the petitioner with the victim on the night of the murder and he smoked crack cocaine with the petitioner after the petitioner had emerged from the bushes. Cromwell also testified that after they smoked crack cocaine. (App. 416 - 417.)

The petitioner claimed that trial counsel's failure to renew her objection constituted ineffective assistance of counsel because the trial court might have granted the motion to suppress the evidence when the testimony was actually offered and because the objection would have preserved the issue for appeal. The petitioner claims that the testimony was inadmissible evidence of prior criminal acts.

The PCR Court found that trial counsel was not ineffective assistance for failing to contemporaneously object to evidence that the petitioner purchased and used crack cocaine on the night of the murder. The PCR Court found there was no reasonable probability that the evidence would have been excluded and that the petitioner had failed to meet his burden of showing trial counsel was ineffective. (App. 677.) The PCR Court noted that trial counsel had already objected twice to the admission of this evidence and the trial court overruled those objections and thus it was reasonable to conclude that

another objection would not have been successful.  Additionally, the PCR Court concluded that the evidence was admissible in any event.

"It is well established that evidence of other crimes or prior bad acts is inadmissible to show criminal propensity or to demonstrate the accused is a bad individual." *State v. Coleman,* 389 S.E.2d 659, 660 (S.C. 1990).  "In a criminal case, the State cannot attack the character of the defendant unless the defendant [himself or] herself first places [his or] her character in issue." *Mitchell v. State*, 379 S.E.2d 123, 125 (S.C. 1989).  Here, the petitioner clearly placed his character in issue when trial counsel stated in her opening statements that the petitioner had been smolking crack cocaine the night of the murder. (App. 145.) The trial court had ruled that the statements of the witnesses were inadmissible and trial counsel obviously made a strategic decision to address the statements that the petitioner had been using crack cocaine.  *See Strickland*, 466 U.S. 689 (reasonable trial strategy is not basis for ineffective assistance claim).

Even assuming counsel was deficient in failing to make a third objection, in light of the trial court's denial of the prior two motions, the petitioner has not shown a reasonable probability that the outcome would have been different.  Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established  federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

**Ground Eight**

In Ground Eight, the petitioner contends trial counsel was ineffective for failing to present favorable witnesses and evidence.  Specifically, the petitioner contends that trial counsel was ineffective when she failed to call Ken Bolin, Norma Holmes, and Stephen Robinson as witnesses. The PCR Court concluded that trial counsel was not ineffective for failing to call these witnesses.  The PCR Court noted that either trial counsel did not know

about the witness or the witness's testimony was not favorable or would not have changed the outcome.   (App. 679-681.)

At the PCR hearing, Ken Bolin testified that he saw a group of young black men and a fully dressed female in the area in which the crime occurred but that he did not see their faces and could not identify anyone present. (App. 635-636; 639-640.) Bolin also testified that his had seen these individuals in the area at dusk which was hours before murder. (App. 636.)

Holmes, the petitioner's sister, testified at the PCR hearing that she saw the petitioner at home sleeping in his bed with his clothes at about 1:00 a.m. on the night of the murder and that there was nothing unusual (i.e dirty or muddy) about the petitioner's clothing.   (App. 642.)   She also testified the petitioner enjoyed a reputation for peacefulness.   (App. 643-644.)

Robinson also testified at the PCR hearing that he worked with the petitioner at the time and the petitioner enjoyed a reputation for peacefulness.  (App. 646-647.)

At the PCR hearing, trial counsel testified that she discussed with the petitioner whether it would be favorable to call some of the witnesses the petitioner had listed as potential defense witnesses. (App. 620.) Trial counsel testified that she served subpoenas on all witnesses suggested by the petitioner.  (App. 622-624.)  Trial counsel testified that she made a strategic decision not to present character witnesses to testify about the petitioner's reputation for peaceful and non-violent behavior and that she discussed the matter at length with the petitioner.  (App. 626.)  She testified that she questioned how valuable character witnesses would be because she believed a good defense had already been presented.  (App. 626.)

Reviewing the testimony of these witnesses at the PCR hearing, there was no reasonable probability that presenting the testimony of these witnesses at trial would have resulted in different outcome.  Bolin was unable to identify any of the people he saw the

night of the murder.  (App. 639-640.)   Holmes testified that she spoke with trial counsel prior to trial, but admitted that she did not tell trial counsel that she saw the petitioner on the night of the murder.  (App. 643.)  Trial counsel cannot be said to have rendered ineffective assistance in failing to solicit testimony of which she was unaware.  *See e.g. Collins v. Francis*, 728 F.2d 1322 (11th Cir. 1984)(trial counsel was not ineffective for failing to investigate witnesses about whom defendant did not tell him).

Further, as to Robinson and Holmes testifying regarding the petitioner's character, trial counsel's decision to not call them was a reasonable trial strategy.  *See Strickland*, 466 U.S. 689 (reasonable trial strategy is not basis for ineffective assistance claim); *Sexton v French*, 163 F.3d 874, 887 (4th Cir. 1998)(tactical decision can not be second-guessed by court reviewing collateral attack); *Fitzgerald v. Thompson*, 943 F.2d 463 (4th Cir. 1991)(tactical decision sustainable unless it is both incompetent and prejudicial).

The petitioner has failed to show that trial counsel's strategic decision not to present this evidence was unreasonable or that the testimony of these witnesses would have made any difference in the outcome of the trial.  Accordingly, the PCR court's decision was not contrary, nor an unreasonable application of, clearly established  federal law.  Further, it was not based upon an unreasonable determination of facts in light of the state court record.  Thus, this ground is without merit.

## IV.  <u>CONCLUSION</u>

Wherefore, it is RECOMMENDED that the Respondent's Motion for Summary Judgment (#15) be GRANTED and the habeas petition be DISMISSED with prejudice.

IT IS SO RECOMMENDED.

s/Bruce Howe Hendricks
United States Magistrate Judge

January 23, 2009
Greenville, South Carolina

**The petitioner's attention is directed to the important notice on the next page.**

23

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 10768
Greenville, South Carolina 29603

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).